UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MISSOURI BROADCASTERS ASSOCIATION, on its own behalf and on behalf of its members; ZIMMER RADIO OF MID-MO, INC., MEYER FARMS, INC., and UNCLE D'S SPORTS BAR & GRILL, LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:13-CV-04034-SOW |
| LAFAYETTE E. LACY, State Supervisor of Liquor Control, in his official capacity, and CHRIS KOSTER, Attorney General of the State of Missouri, in his official capacity, | ) ) ) ) ) | **PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | ) ) | |

THOMPSON COBURN LLP
Mark Sableman, # 36276
Michael L. Nepple
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6000
FAX 314-552-7000
msableman@thompsoncoburn.com
mnepple@thompsoncoburn.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

    I.       Plaintiffs, as Alcoholic Beverage Sellers and their Prospective Advertising Media, Have Standing to Challenge Unconstitutional State Restrictions on Advertising. ..................................................................................................................... 1

    II.      This Court Should Not Abstain From Deciding This Important First Amendment Issue ................................................................................................................. 6

    III.     Plaintiffs' First Amendment Challenge to Missouri's Alleged Unconstitutional Advertising Restrictions Clearly States A Claim, And the State's Arguments About Their Effect and Alleged Twenty-First Amendment Justification Do Not Negate the Sufficiency of the Allegations. ..................................................................................................................... 8

          A.      The Complaint Clearly Pleads an Unconstitutional Abridgement of the Plaintiff's First Amendment Rights to Advertise. .................................. 8

          B.      Neither the Twenty-First Amendment, nor the State's Interests in Regulating the Alcoholic Beverage Industry, Provides an Automatic Justification for Restricting Alcoholic Beverage Advertising. ............................................................................................... 10

    IV.     The Missouri Attorney General is a Proper Defendant ......................................... 12

    V.      Defendants' Arguments As to Count IV of the Original Complaint are Moot In Light of Plaintiff's First Amended Complaint. ......................................... 14

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*281 Care Committee v. Arneson*, 638 F.3d 621 (8th Cir. 2011) .................................................. 2, 5

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) .................................................. 1, 11, 12

*Advantage Media, LLC v. City of Eden Prarie*, 456 F.3d 793 (8th Cir. 2006) ............................... 5

*Beavers v. Arkansas State Board of Dental Examiners*, 151 F.3d 838 (1998) ........................ 6, 7, 8

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) .............................................................................. 9

*California v. LaRue*, 409 U.S. 109 (1972) ..................................................................................... 11

*Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980) ..................................................................................................................... 11, 12

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) ................................................................................... 6

*England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964) .......................... 7

*Folsom v. City of Jasper*, 612 S.E.2d 287 (Ga. 2005) .................................................................. 12

*Gralike v. Cook*, 996 F. Supp. 889 (W.D. Mo. 1998) ..................................................................... 6

*Granholm v. Heald*, 544 U.S. 460 (2005) ..................................................................................... 10

*Greater New Orleans Broadcasting Association, Inc. v. United States*, 527 U.S. 173 (1999) ............................................................................................................................. 11

*Harman v. Forssenius*, 380 U.S. 528 (1965) ................................................................................... 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................................... 2

*Milgram Food Stores, Inc. v. Ketchum*, 384 S.W.2d 510 (Mo. 1964) ............................................ 8

*Missouri Protection and Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007) ............................................................................................................................. 13

*Pitt News v. Fisher*, 215 F.3d 354 (3d Cir. 2000) ........................................................................... 2

*Pitt News v. Pappert*, 379 F.3d 96 (3d Cir. 2004) .......................................................................... 3

*Reproductive Health Services of Planned Parenthood v. Nixon*, 428 F.3d 1139 (8th Cir. 2005) ..................................................................................................................... 12, 13

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) ....................................................................... 12

*United Food and Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544 (1996) ............................................................................................................................. 3

**Statutes**

Civil Rights Act, 42 U.S.C. § 1983 ............................................................................................... 6

RSMo. § 188.039 ......................................................................................................................... 13

RSMo. § 27.030 ........................................................................................................................... 13

RSMo. § 27.060 ........................................................................................................................... 13

RSMo. § 311.070 ............................................................................................................... 9, 13, 14

RSMo. § 311.770 ......................................................................................................................... 13

RSMo. § 311.790 ......................................................................................................................... 13

## INTRODUCTION

Defendants' arguments in their Motion to Dismiss are meritless as to Counts I through III of the Complaint. Moreover, in order to clarify its allegations, and avoid quibbling over language in the original Complaint, Plaintiffs have filed a First Amended Complaint, which clarifies and elaborates on the chilling effect that the statute and regulations in issue here create with respect to commercial speech, as it is felt by both alcoholic beverage sellers and broadcasters. The First Amended Complaint does not retain Count IV of the original Complaint, which questioned the power of the state under state law to issue unconstitutional regulations.

In light of the First Amended Complaint, these suggestions respond only to the Defendants' arguments as to Counts I through III of the original Complaint, because Count IV is no longer being asserted. And because the First Amended Complaint is now the complaint in issue, the suggestions respond to Defendants' arguments in light of the enhanced allegations of the First Amended Complaint.

I. **PLAINTIFFS, AS ALCOHOLIC BEVERAGE SELLERS AND THEIR PROSPECTIVE ADVERTISING MEDIA, HAVE STANDING TO CHALLENGE UNCONSTITUTIONAL STATE RESTRICTIONS ON ADVERTISING.**

Plaintiffs are directly harmed by the state's unconstitutional restrictions on alcohol advertising and have standing to challenge those restrictions.

First, the plaintiffs who make alcoholic beverages (Meyer Farms) and who sell alcoholic beverages (Uncle D's and Meyer Farms) are clearly directly affected by the statute and regulations in issue, which limit the truthful advertising of their products. The mere existence in the state's codes of the statute, which carries criminal penalties, and the regulations, which if enforced could lead to fines, penalties, and even the revocation of liquor licenses, clearly affect these plaintiffs. *See, e.g., 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) (not even questioning that a retailer had standing to challenge alcohol advertising regulations). Because

Plaintiffs meet the required elements as set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) – (1) injury in fact; (2) causation; and (3) redressability – there is constitutional standing.

In particular, the Eighth Circuit held that "[t]o establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (internal citation omitted). "Rather, the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute. Self-censorship can itself constitute injury in fact." *Id.* Here, plaintiffs have adequately pled that they have a reasonable intention to advertise in manners prohibited, but have been chilled from doing so by a reasonable belief that the challenged statute and regulations will be enforced against them. *Id.*; Compl. (Dk. 1) at ¶¶ 25–27, 38–39.

Second, the broadcaster plaintiffs, which includes MBA as an association acting on behalf of all of its radio and television broadcast station members throughout the state, and Zimmer Broadcasting on its own, are clearly affected, because the statute and regulations in issue chill, discourage, and inhibit advertising which would otherwise be placed with these stations. It is irrelevant, as alleged by Defendants, that the broadcaster plaintiffs are not licensed under the liquor control laws – the elements set forth in *Lujan* are satisfied. In fact, the Third Circuit considered the almost exact same fact pattern in *Pitt News v. Fisher*, 215 F.3d 354 (3d Cir. 2000). There, the court found that a student newspaper (akin to Zimmer, a radio broadcaster) had standing to challenge the constitutionality of a Pennsylvania statute that provided penalties against businesses that advertise alcoholic beverages in newspapers published by an educational institution. *Id.* at 359–61 (in the preliminary injunction context); *see also Pitt News v. Pappert*,

379 F.3d 96 (3d Cir. 2004) (opinion by then-Judge Alito striking down the liquor advertising law at issue as unconstitutional). Accordingly, Zimmer, a radio broadcaster who has alleged injury in great detail because the challenged statute and regulations have prevented it from placing prohibited advertisements on the radio while similar advertisements regularly appear online, has standing. *See* Compl. (Dk. 1) at ¶¶ 26–34, 38–39.

As to MBA, Defendants do not even challenge that it has proper associational standing to the extent its members would have standing to sue in their own right. *See United Food and Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 553 (1996) ("[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."). As explained above, Zimmer, a MBA station, has constitutional standing, and, similarly, other MBA stations also could have brought suit as alleged in the Complaint. *See* Compl. (Dk. 1) at ¶¶ 26–34, 38–39. There is also no doubt that the present action seeks to protect interests germane to MBA's organizational purpose, and because this action requests only non-monetary and injunctive relief, participation of MBA's members is not required. Accordingly, MBA has standing.

Finally, in order to further clarify and elaborate on the harm caused to both the alcoholic beverage plaintiffs and the broadcaster plaintiffs, plaintiffs have filed a First Amended Complaint. As to the alcoholic beverage plaintiffs, the complaint now describes specific threats and past actions that clearly reasonably chill alcoholic beverage producers, wholesalers and retailers with respect to engaging in truthful advertising that might implicate the statute or regulations in issue. Among other things, it describes a massive enforcement action in the

- 3 -

Case 2:13-cv-04034-SOW   Document 11   Filed 04/29/13   Page 7 of 19

Springfield area in which many different retailers were involved, and in which broadcasters were specifically warned as to the alleged unlawfulness of certain truthful ads from their alcoholic beverage retailer customers. *See* First Am. Compl. (Dk. 10) at ¶¶ 35–37, 51–52. It also specifically alleges that retailers have desired to advertise truthful information regarding their pricing and specials but have been inhibited from doing so because of the Discount Advertising Prohibition Regulation and the Below Cost Advertising Prohibition Regulation. *See id.* at ¶¶ 39–52. The allegations of the First Amended Complaint make it clear that this is definitely not a situation where the Challenged Advertising Regulations have not been enforced against Missouri retailers. *See id.* at ¶¶ 34–35, 49 (describing past enforcement). Thus, there is now no question remaining that alcoholic beverage retailers have desired to place truthful advertisements with broadcasters in Missouri, who are members of MBA, and have been chilled from engaging in such protected commercial speech because of the Challenged Advertising Regulations.

    The plaintiffs from the alcoholic beverage industry are even more directly affected by the Challenged Advertising Regulations. Plaintiff Uncle D's, a bar in St. Joseph, has desired to place advertisements in various media for happy hours and other discounts but has not done so because of the threat of prosecution. The First Amended Complaint specifically alleges as to Uncle D's that it "has not purchased such commercials because of the threat that the Missouri Division of Alcohol and Tobacco Control could claim violations of Missouri law, under the Discount Advertising Prohibition Regulation and/or the Below Cost Advertising Prohibition Regulation, and such enforcement actions could subject UNCLE D's to possible fines or penalties, or even suspension of its liquor license." *See* First Am. Compl. (Dk. 10) at ¶ 45. The amended complaint further notes that it has been Uncle D's experience that advertising sales representatives for all media, both broadcast and print, in the St. Joseph area, are familiar with

the Discount Advertising Prohibition Regulation, understand it to prohibit media advertising of alcoholic beverage discounts and special pricing, and therefore advise Uncle D's against engaging in such advertising. *See id.* at ¶ 46. Similarly, as to plaintiff Meyer Farms, a Missouri winemaker, the First Amended Complaint has alleged that its successful entry into the marketplace is being inhibited by the Challenged Advertising Regulations, which prohibit truthful advertising that would help acquaint Missouri consumers with this new Missouri product. *Id.* at ¶ 47. It further alleges that Meyer Farms has applied for a retail license, and would like to engage in the advertising prohibited by the Challenged Advertising Regulations once it receives its retail license. *Id.* at ¶ 48.

The allegations relating to how Uncle D's has been prevented from engaging in truthful advertising that it would like to place in various media, how Meyer Farms has not been able to have discount offers advertised to attract consumers to its new products, and how Meyer Farms would like to advertise once it gets a retail license, all clearly establish standing. *See 281 Care Comm.*, 638 F.3d at 627 ("Reasonable chill exists when a plaintiff shows 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.'").[1] Accordingly, constitutional standing exists in this case.

---

[1] Plaintiffs are at a loss to understand Defendants argument with respect to *Advantage Media, LLC v. City of Eden Prarie*, 456 F.3d 793 (8th Cir. 2006). There, the plaintiff challenged the entire Eden Prarie Sign Code as unconstitutional – in opposition to Defendants who have narrowly targeted two specific regulations and one statutory provision. *Id.* at 797–99. In *Advantage Media*, the Eighth Circuit dismissed the case for lack of constitutional standing under the *redressability* prong of *Lujan* (among other grounds) because even if challenged provisions were found unconstitutional, plaintiff's permit requests still would have been denied under other provisions of the code. *Id.* at 799–802. This case in entirely irrelevant to the present facts.

## II. THIS COURT SHOULD NOT ABSTAIN FROM DECIDING THIS IMPORTANT FIRST AMENDMENT ISSUE.

Defendants' other procedural challenge to this suit – the argument that the Court should abstain from deciding the issues in Counts I and II – is meritless.[2] The Civil Rights Act specifically contemplates federal courts redressing unconstitutional acts by states, and there is no reason for this court not to enforce the federal Constitution in this instance. Moreover, Defendant's *Pullman* abstention argument does not apply here, because there is no true underlying state law ground that could avoid or modify the constitutional question of whether the statute and regulations violate the First Amendment.

There is no good reason for this court to abstain from deciding this case, and every reason why it should decide it. Actions of this nature are specifically authorized by the Civil Rights Act, 42 U.S.C. § 1983, which exists precisely to allow federal courts to remedy state violations of federal constitutional rights. Federal courts routinely address claims of state deprivations of federal constitutional rights, especially when the alleged deprivations involve First Amendment rights, and the plaintiffs face "the hazard of loss or substantial impairment of those precious rights." *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). Indeed, the Eighth Circuit, in a case cited by defendants, has acknowledged that "*Pullman* abstention has generally been disfavored where state statutes have been facially challenged under the federal constitution." *Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838, 841 (1998); *see also Gralike v. Cook*, 996 F. Supp. 889, 899–900 (W.D. Mo. 1998) ("[A]bstention is not proper where a plaintiff makes a facial challenge to a state statute on First Amendment grounds.").

*Pullman* abstention requires consideration of

---

[2] Plaintiffs note that Defendants have not asserted *Pullman* abstention as to Count III.

> (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations.

*Beavers*, 151 F.3d at 841. "Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. . . . The doctrine . . . contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." *Id.* (alteration in original) (*quoting Harman v. Forssenius*, 380 U.S. 528, 534 (1965)).

Here, the abstention doctrine is not applicable because there is no true underlying state law ground that could avoid or modify the constitutional question of whether the challenged statute and regulations violate the First Amendment. Plaintiffs' only state law claim, Count IV, which the First Amended Complaint has not retained, was premised solely on the fact that since the regulations violate the federal Constitution, the Supervisor had no authority. Independent state grounds have not been raised by either party; in fact, the Attorney General vigorously defends the challenged statute and regulations in its motion to dismiss under the Constitution without raising any state grounds. *See Beavers*, 151 F.3d at 841 (regarding "available state remedies"). Thus, there is nothing for the Court to stay the case for under *Pullman* abstention. Plaintiffs are not required to present federal constitutional issues in state court, as it would then be unable to raise the same issues in federal court as a matter of *res judicata*. *See England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 419 (1964). Moreover, whether the Supervisor had the authority to make the challenged regulation was already decided by Missouri courts in *Milgram*

*Food Stores, Inc. v. Ketchum*, 384 S.W.2d 510 (Mo. 1964) (with respect to similar predecessor regulation), and thus there is no uncertain state law ground to be addressed. *See Beavers*, 151 F.3d at 841 (regarding "(3) whether the challenged state law is unclear" and (4) "whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question"). Accordingly, the Court should reject Defendants *Pullman* abstention arguments.

### III. PLAINTIFFS' FIRST AMENDMENT CHALLENGE TO MISSOURI'S ALLEGED UNCONSTITUTIONAL ADVERTISING RESTRICTIONS CLEARLY STATES A CLAIM, AND THE STATE'S ARGUMENTS ABOUT THEIR EFFECT AND ALLEGED TWENTY-FIRST AMENDMENT JUSTIFICATION DO NOT NEGATE THE SUFFICIENCY OF THE ALLEGATIONS.

Defendant's substantive attacks on Count III of the Complaint (challenging a statute) and Counts I and II (challenging regulations) seem to claim that the challenged statute and regulations (a) don't really target advertising, and (b) are somehow justified as state regulations of the alcoholic beverage industry pursuant to clause 2 of the Twenty-first Amendment. These arguments are incorrect, but even more relevant to this motion, they go to the merits of the claims, not the sufficiency of the allegations.

#### A. The Complaint Clearly Pleads an Unconstitutional Abridgement of the Plaintiff's First Amendment Rights to Advertise.

Plaintiffs have clearly alleged that the statute and regulations in issue unconstitutionally regulate advertising and thereby restrict their First Amendment rights. Defendants' assertion that the statute and regulations aren't really advertising regulations is irrelevant on this motion to dismiss, which simply tests the sufficiency of the pleadings. The Complaint clearly states that the statute and regulations regulate advertising. Compl. (Dkt. 1) ¶¶ 18–24; First Am. Compl. (Dk. 10) ¶¶ 18–24. It quotes from the statute and regulations, showing that their plain language restricts what entities like Meyer Farms and Uncle D's can state in their advertisements. Compl.

(Dk. 1) ¶¶ 18–20; First Am. Compl. (Dk. 10) ¶¶ 18–20. It states that Meyer Farms and Uncle D's have been inhibited in fully advertising their products because of the statute and regulations. Compl. (Dk. 1) ¶¶ 25, 38, 39, 47; First Am. Compl. (Dk. 10) ¶¶ 25, 44–48, 61, 62, 70. It alleges that the statute and regulations are therefore unconstitutional. Compl. (Dk. 1) ¶¶ 47, 49, 58, 60, 70, 72; First Am. Compl. (Dk. 10) ¶¶ 70, 72, 81, 83, 93, 95.

The mere fact that Defendants contend that the statute and regulation should be interpreted as something other than advertising regulations cannot negate the sufficiency of the pleadings. Moreover, just as a plaintiff must allege "plausible" facts in its Complaint, *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), a party cannot successfully attack a pleading by using an implausible argument. Implausible is the only word for the Defendants' argument here that "The gist of subsection (10) is not advertising per se" (Def. Sugg. 9), when, in fact, section 311.070(10), uses the word "advertisement" five times, expressly limits advertising content, and expressly compels certain content to be placed in an advertisement. Such an implausible Orwellian interpretation of a statute cannot succeed on the merits, and certainly deserves no weight at the motion-to-dismiss stage when offered against a properly pleaded claim.

Moreover, while Defendants make this implausible argument with respect to the statute challenged in Count III, they do not even attempt it with respect to the regulations challenged in Count I and II, admitting that the regulations "restrict the place of some advertising to the business and restrict the manner of some advertising appearing in external media." (Def. Sugg. 11.) Essentially, therefore, the Defendants admit that the regulations do restrict advertising. Plaintiffs have clearly challenged the constitutionality of these advertising restrictions, and Defendant's attempt to recharacterize the challenged statute does not negate the sufficiency of the Complaint.

- 9 -

### B. Neither the Twenty-First Amendment, nor the State's Interests in Regulating the Alcoholic Beverage Industry, Provides an Automatic Justification for Restricting Alcoholic Beverage Advertising.

Defendants appear to take the position that because they can allege a justification for the advertising restrictions in the statute and regulations, founded in the state's attempt to regulate the alcoholic beverage industry, that alleged justification automatically defeats Plaintiff's claims. But the United States Supreme Court has squarely held that the Twenty-first Amendment does not trump the First Amendment, and that state attempts to regulate the liquor industry cannot automatically justify abridgements on the First Amendment right to advertise.

Defendants offer a litany of explanations for why they believe the challenged statue and regulations are justifiable. All of these explanations are based on the state's authority and desire to regulate the alcoholic beverage industry – "a public policy regarding primarily the organization of the liquor industry" (Def. Sugg. 8), a desire to "lessen[] the risk of undue influence being exerted by the manufacturers or wholesalers" (Def. Sugg. 9), regulation of "the business relationship[s] between different levels of the liquor industry" (Def. Sugg. 10), "aims [that] are undoubtedly legitimate" (Def. Sugg. 11–12), "the State's interest in regulating the liquor industry" (Def. Sugg. 12). All of these claims go far beyond the pleadings, and have no place in a Rule 12 motion to dismiss. But even accepting their validity for purposes of argument, they in no way negate the claims stated in Counts I through III of the Complaint, and all of the claims of the First Amended Complaint, because a State's authority under the Twenty-first Amendment to regulate its alcoholic beverage industry cannot justify unconstitutional restraints on liquor advertising.

The Supreme Court recently noted in *Granholm v. Heald*, 544 U.S. 460, 462 (2005), that state laws violating the First Amendment "are not saved by the Twenty-first Amendment." That principle, indeed, was discussed and applied at length in the Supreme Court's landmark case, *44*

- 10 -

Case 2:13-cv-04034-SOW   Document 11   Filed 04/29/13   Page 14 of 19

*Liquormart, Inc. v. Rhode Island,* 517 U.S. 484 (1996), in which the Supreme Court expressly disavowed the reasoning of an earlier decision, *California v. LaRue*, 409 U.S. 109 (1972), which took the position that the Twenty-first Amendment required that an extra presumption of validity be applied to laws, including speech restrictions, that attempted to regulate alcoholic beverage activity. Indeed, in *44 Liquormart*, the Supreme Court declared:

> [W]e now hold that the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment. The Twenty-first Amendment, therefore, cannot save Rhode Island's ban on liquor price advertising.

*Id.* at 516. Thus, the state's recital of all of its liquor-regulation purported justifications for the statute and regulation in question, even if considered despite its inappropriateness on a motion to dismiss, has no impact on the sufficiency of the First Amendment allegations asserted here.

Rather, the constitutionality of restrictions on advertising must be assessed based on the constitutional commercial speech test of *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557 (1980), which requires an assessment of the substantiality of the governmental interest asserted in justification of the advertising restrictions, whether the regulations in issue directly advance that governmental interest, and whether the regulations are no more extensive than necessary to serve that interest. *Id.* at 563–64. This test shelters commercial speech from excessive government regulation. *Central Hudson*'s immediate progeny made it clear that its "intermediate scrutiny" standard is an exacting one and cannot be satisfied by casual legislation. Both explicit legislative fact-finding and careful tailoring of regulation to the perceived harm are required to satisfy First Amendment concerns. Under *Central Hudson*, "the Government bears the burden of identifying a substantial interest and justifying the challenged restriction." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999) (internal citations omitted). Moreover, the burden of showing that a

speech restriction directly and materially advances the asserted governmental interest cannot be satisfied by "mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* at 188 (internal citation omitted).

State attempts to meet governmental objectives like reducing alcohol consumption by restricting truthful advertising of alcoholic beverage pricing almost always fail the *Central Hudson* test, as, indeed, occurred in *44 Liquormart* itself. For instance, in *Folsom v. City of Jasper*, 612 S.E.2d 287 (Ga. 2005), an ordinance that prohibited advertising of alcohol price and brand failed the *Central Hudson* test because the city could not establish "a reasonable fit between its abridgement of speech and its temperance goal." *Id.* at 262 (internal quotations omitted). The court noted that there were "numerous other means to reduce alcohol consumption without curtailing speech"; the city could have chosen to "raise taxes to increase the cost of alcohol, implement educational programs to increase awareness of the dangers of alcohol, or even ban the sale of alcohol outright." *Id.*; *accord Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) (striking down beer advertising regulations).

Defendants do not even attempt to address or meet the *Central Hudson* standard, and *44 Liquormart* makes it clear that mere invocation of a state intent to regulate its alcoholic beverage industry, like that contained in pages 8–12 of Defendants' suggestions, cannot defeat a challenge to alcoholic beverage advertising restrictions.

## IV. THE MISSOURI ATTORNEY GENERAL IS A PROPER DEFENDANT

The very cases to which the Attorney General cites establish that he is a proper defendant in this case. As explained in *Reproductive Health Services of Planned Parenthood v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005), "the Supreme Court held [in *Ex parte Young*] that the Eleventh Amendment does not bar a suit against a state official to enjoin enforcement of an allegedly

- 12 -

Case 2:13-cv-04034-SOW   Document 11   Filed 04/29/13   Page 16 of 19

unconstitutional statute, provided that 'such officer [has] some connection with the enforcement of the act.'" Attorney General Koster alleges he has no such connection because RSMo. § 311.790 only permits him to prosecute violations "at the request of the governor"—otherwise, all such duties are vested in county prosecutors.

Yet, in *Reproductive Health Services*, the Eighth Circuit rejected a similar argument. There, then Attorney General Nixon argued the Eleventh Amendment prevented the suit against him because pursuant to a different Missouri statute, § 188.039, he had no power to initiate misdemeanor prosecutions. *Id.* at 1145. However, the Eighth Circuit still found that Attorney General Nixon was "a potentially proper party" and that the exception to Eleventh Amendment immunity applied because under § 27.030 (which generically applies to all Missouri law), the attorney general was authorized to aid prosecutors when so directed by the Governor. *Id.*; *see also Mo. Prot. and Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (rejecting another similar challenge by the attorney general, citing RSMo. §§ 27.030, 27.060).

Here, Attorney General Koster also has a sufficient connection with enforcement of RSMo. § 311.070.4(10) under § 27.030 using the same analysis in *Reproductive Health Services*. Moreover, the connection is even greater because, unlike in that case, another statute explicitly allows the attorney general to enforce the liquor control laws "at the request of the governor" under RSMo. § 311.790. Finally, Attorney General Koster tellingly fails to discuss his authority under RSMo. § 311.770(3)—that provision states:

> Whenever any prosecuting attorney shall be unable or shall neglect, fail or refuse to enforce any of the provisions of this chapter, or for any reason whatsoever, the provisions of this chapter shall not be enforced in any county in this state, it shall be the duty of the attorney general of the state to enforce the same in such county, and for that purpose, he may appoint as many assistants as he shall deem necessary, and he and his assistants shall be authorized to sign, verify and file, all such complaints, affidavits, petitions, informations, indictments and papers as the

> prosecuting attorney is authorized to sign, verify or file, and to do and perform any act that the prosecuting attorney might lawfully do or perform.

This provision requires the Attorney General as his duty to enforce the liquor control laws, including RSMo. § 311.070.4(10), whenever "*for any reason whatsoever*," they are not being enforced in any county in Missouri. It does not require a request from the governor, but authorizes the Attorney General to enforce the liquor control laws when he believes they are not being enforced in any county. Because there is a sufficient connections between the Attorney General and the challenged statute, the Attorney General's Eleventh Amendment challenge should be rejected.[3]

## V. DEFENDANTS' ARGUMENTS AS TO COUNT IV OF THE ORIGINAL COMPLAINT ARE MOOT IN LIGHT OF PLAINTIFF'S FIRST AMENDED COMPLAINT.

Defendants' argument that Eleventh Amendment immunity precludes this court from ruling on Count IV of the Complaint (unnumbered argument at Def. Sugg. 3–4) is now moot because, in an attempt to simplify the case and avoid unnecessary briefing, Plaintiffs have filed an Amended Complaint which does not include Count IV.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be denied.

---

[3] If the court determines that the Attorney General is not a proper party, Plaintiffs would request leave to substitute one or more county prosecuting attorneys as defendants. However, for the reasons set forth above, they do not believe the addition of prosecuting attorney defendants (who, in any event, would most likely be represented by the Attorney General) is necessary.

DATED: April 29, 2013                    Respectfully submitted,

                                         THOMPSON COBURN LLP

                                         By: *s/Mark Sableman*
                                             Mark Sableman, # 36276
                                             Michael L. Nepple
                                             One US Bank Plaza
                                             St. Louis, Missouri 63101
                                             314-552-6000
                                             FAX 314-552-7000
                                             msableman@thompsoncoburn.com
                                             mnepple@thompsoncoburn.com

                                         *Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2013, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Robert Presson
Assistant Attorney General
Supreme Court Building
P.O. Box 899
Jefferson City, MO 65102
Robert.presson@ago.mo.gov

                                         By: *s/Mark Sableman*
                                         Mark Sableman
                                         Attorney for Plaintiffs
                                         Thompson Coburn LLP
                                         One US Bank Plaza
                                         St. Louis, MO 63101
                                         (314) 552-6000