IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MISSOURI BROADCASTERS ASSOCIATION, et al, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 2:13-cv-04034-MDH |
| DOROTHY TAYLOR, et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER**

Plaintiffs Missouri Broadcasters Association, Zimmer Radio of Mid-Mo, Inc., Meyer Farms, Inc., and Uncle D's Sports Bar & Grill have brought this lawsuit seeking a declaratory judgment and injunctive relief related to three separate Missouri restrictions on the advertising of alcoholic beverages.[1] Plaintiffs allege the two regulations and one statute at issue violate their right to freedom of speech under the First Amendment. Defendants deny the allegations and contend the provisions directly advance the State's substantial interests in preventing overconsumption of alcohol, preventing illegal underage drinking, and maintaining an orderly marketplace.

**PROCEDURAL HISTORY**

On March 31, 2015, Judge Gaitan issued an Order denying Plaintiffs' Motion for Summary Judgment and granting (on reconsideration) Defendants' Motion to Dismiss. (Doc. 57). The Court

---

[1] MBA, a non-profit corporation, is a trade association that promotes the interest and welfare of the broadcasting industry in Missouri. Zimmer Radio is an MBA member and operates seven Missouri radio stations. Meyer Farms grows grapes on its Missouri farm, has a winery make its grapes into wine, and then sells the wine. Uncle D's is a bar and grill that serves alcohol.

subsequently dismissed all claims in Plaintiffs' Complaint in March 2016. (Doc. 62). Plaintiffs appealed Judge Gaitan's ruling and the Eighth Circuit reversed the Rule 12(b)(6) dismissal, remanding the case back to this Court. The Eighth Circuit stated: "Plaintiffs, at a minimum, pled sufficient facts to survive a Rule 12(b)(6) motion to dismiss. On its face, the amended complaint plausibly demonstrates the challenged provisions do not directly advance the government's asserted substantial interest, are more extensive than necessary, and unconstitutionally compel speech and association." *Missouri Broadcasters Ass'n v. Lacy*, 846 F.3d 295, 303 (8th Cir. 2017) (internal citation omitted). The Eighth Circuit further stated, "our review of the grant of the motion to dismiss does not impact the district court's denial of summary judgment." *Id.* at 299 n. 4.

On remand, Plaintiffs filed a motion for reconsideration and/or motion for summary judgment. This Court denied the motion for reconsideration, finding disputed material facts, and scheduled the case for trial. (Doc. 95) ("A case of this importance is best resolved after a more complete evaluation of the evidence rather than on summary judgment based on generalized legal conclusions."). On February 20, 2018, the Court conducted a bench trial and the parties presented evidence and argument on the pending claims. For the reasons set forth herein, the Court finds in favor of Plaintiffs.

## THE REGULATIONS AND STATUTE

This case involves Plaintiffs' challenge of two Missouri regulations prohibiting the advertising of certain information by alcohol manufacturers, retailers, wholesalers and distributors and one Missouri statute limiting how wholesalers and distillers advertise their products through retailers.[2]

---

[2] The factual findings set forth herein are based on both the undisputed material facts presented in the summary judgment briefing and the evidence presented during trial.

The "Challenged Regulations" are two parts of 11 C.S.R. 70-2.240, which prohibits media advertisements of alcoholic beverages unless the advertisements conform to requirements set forth later in the regulations. Subsection (5)(G) (the "Discount Advertising Prohibition Regulation"), states:

(5) No advertisement of intoxicating liquor or nonintoxicating beer shall contain:

(G) Any statement offering any coupon, premium, prize, rebate, sales price below cost or discount as an inducement to purchase intoxicating liquor or nonintoxicating beer except, manufacturers of intoxicating liquor other than beer or wine shall be permitted to offer and advertise consumer cash rebate coupons and all manufacturers of intoxicating liquor may offer and advertise coupons for nonalcoholic merchandise in accordance with section 311.355, RSMo;

In essence, this regulation forbids media advertising of price discounts with some exceptions. Retailers are prohibited from offering a coupon or discount to purchase beer or wine, but not intoxicating liquor other than beer or wine. The regulation also prohibits retailers from outside advertising of discounts on alcohol. However, the same discounts may be advertised inside the establishments.[3] Generic advertisements such as "Happy Hour" or "Ladies Night" may be used in outside advertising, but other discounts in outside advertising are not permitted, such as "two-for-one" specials.

Subsection (5)(I) (the "Below Cost Advertising Prohibition Regulation"), states:

(5) No advertisement of intoxicating liquor or nonintoxicating beer shall contain:

(I) A price that is below the retailer's actual cost.

---

[3] Outside advertising refers to any advertising of a discount price communicated outside the establishment or visible outside the physical premises of the retailer. Inside advertising refers to advertising of a discount price only visible or communicated within the physical premises of the retailer.

3

The Below Cost Advertising regulation simply prohibits retailers from advertising prices that are below the retailer's cost. It does not prohibit retailers from selling alcohol at a price below the retailer's cost.

The statute-in-question (the "Challenged Statute"), Ann. Stat. § 311.070.1 states:

> Distillers, wholesalers, winemakers, brewers or their employees, officers or agents shall not, except as provided in this section, directly or indirectly, have any financial interest in the retail business for sale of intoxicating liquors, and shall not, except as provided in this section, directly or indirectly, loan, give away or furnish equipment, money, credit or property of any kind, except ordinary commercial credit for liquors sold to such retail dealers. However, notwithstanding any other provision of this chapter to the contrary, for the purpose of the promotion of tourism, a distiller whose manufacturing establishment is located within this state may apply for and the supervisor of liquor control may issue a license to sell intoxicating liquor, as in this chapter defined, by the drink at retail for consumption on the premises where sold; and provided further that the premises so licensed shall be in close proximity to the distillery and may remain open between the hours of 6:00 a.m. and 1:30 a.m., Monday through Saturday and between the hours of 9:00 a.m. and midnight, Sunday. The authority for the collection of fees by cities and counties as provided in section 311.220, and all other laws and regulations relating to the sale of liquor by the drink for consumption on the premises where sold, shall apply to the holder of a license issued under the provisions of this section in the same manner as they apply to establishments licensed under the provisions of section 311.085, 311.090, or 311.095.

Mo. Ann. Stat. § 311.070.1. The statute in essence prohibits distillers, wholesalers, brewers or winemakers from providing any financial aid to retailers, including through advertising, except as provided in Mo. Ann. Stat. § 311.070., section 4(10), which states:

> 4. Notwithstanding other provisions contained herein, the distiller, wholesaler, winemaker or brewer, or their employees, officers or agents may engage in the following activities with a retail licensee licensed pursuant to this chapter: …
>
> (10) The distiller, wholesaler, winemaker or brewer may in an advertisement list the names and addresses of two or more unaffiliated retail businesses selling its product if all of the following requirements are met:
>
> (a) The advertisement shall not contain the retail price of the product;
> (b) The listing of the retail businesses shall be the only reference to such retail businesses in the advertisement;

4

> (c) The listing of the retail businesses shall be relatively inconspicuous in relation to the advertisement as a whole; and
> (d) The advertisement shall not refer only to one retail business or only to a retail business controlled directly or indirectly by the same retail business;

Mo. Ann. Stat. § 311.070.

The exception contained in Section 4(10) allows a producer or wholesaler of alcohol to advertise on behalf of retailers under certain conditions. To meet the requirements of the exception, producers and wholesalers must exclude the retail price of their products from the advertisements if they identify a retailer; must include multiple unrelated retailers if they choose to identify a retailer; and even then, retailers may only be mentioned in an inconspicuous manner.

It is undisputed, that under existing Missouri law, retailers, such as bars and liquor stores, may advertise and promote price discounts for alcoholic beverages *inside* their establishments. Further, while Missouri state regulation 11 C.S.R. § 70-2.240(5)(G) generally bars media advertising of alcoholic beverage price discounts, it explicitly permits manufacturers of intoxicating liquor, other than beer or wine, to both offer and advertise consumer cash rebate coupons. In addition, Missouri permits media advertising of alcoholic beverage price discounts with generic descriptions (e.g., "Happy Hour" and "Ladies Night"), but does not allow specific prices to be used.

Finally, violations of the regulations or statute may result in fines and penalties, the suspension or revocation of alcoholic sales licenses, and/or misdemeanor criminal prosecutions. See Mo. Ann. Stat. §§ 311.660, 311.868, and 311.880. All these remedies have been enforced by the State.

## DISCUSSION

To begin, "the parties agree the challenged provisions regulate commercial speech." See *Missouri Broadcasters Association v. Lacy*, 846 F.3d at 300. "The First Amendment 'accords

5

a lesser protection to commercial speech than to other constitutionally guaranteed expression.'" *Id.* (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 563, 100 S. Ct. 2343, 2347, 65 L. Ed. 2d 341 (1980)). In *Central Hudson*, the Supreme Court identified four considerations to determine the constitutionality of laws burdening commercial speech: "(1) whether the commercial speech at issue concerns unlawful activity or is misleading; (2) whether the governmental interest is substantial; (3) whether the challenged regulation directly advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to further the government's interest." *Id.* (citing *1–800–411–PAIN Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1055 (8th Cir. 2014)); see also *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996).[4] Here, the Eighth Circuit has stated, "The interest in Missouri's Liquor Control Law, the greater statutory scheme within which the challenged restrictions are situated, is "to promote responsible consumption, combat illegal underage drinking, and ... maintain[ ] an orderly marketplace." Mo. Ann. Stat. § 311.015.

The Court finds there is a substantial government interest in both dissuading overconsumption of alcohol and combating underage drinking, and Plaintiffs acknowledge the State has these substantial interests. Significant health and public safety interests are clearly involved in both. Further, while Plaintiffs do not concede that the State has a substantial interest in maintaining an orderly marketplace, for the reasons set forth herein, the Court finds that there is also a substantial State interest in maintaining an orderly marketplace. Therefore, the Court's decision here focuses its analysis under *Central Hudson's* third and fourth factors and whether

---

[4] There is no claim that the advertising prohibited by these regulations and statute are unlawful or misleading. The parties agree that the advertising at issue contains truthful information.

the regulations and statute at issue: 1) directly advance the state's substantial interests; and/or 2) are no more extensive than necessary.

## I. THE REGULATIONS - Subsection (5)(G) (the "Discount Advertising Prohibition Regulation") and Subsection (5)(I) (the "Below Cost Advertising Prohibition Regulation").

In support of their claims, Plaintiffs argue the regulations prohibit truthful, non-misleading commercial speech and restrict the flow of truthful information to potential customers. *Missouri Broadcasters Ass'n v. Lacy*, 846 F.3d at 299. Plaintiffs also argue there is no evidence that the regulations significantly impact overconsumption of alcohol or underage drinking. They further claim that the state is inconsistent in its enforcement of the regulations and therefore cannot show the regulations directly advance the State's interest. Finally, Plaintiffs claim the State cannot establish that the regulations are no more extensive than necessary to serve its substantial interest. *Id.* In response, Defendants simply argue that the statute and regulations directly advance the State's interest and do not violate the First Amendment.

Under the applicable legal framework, and as admitted by the State, the State has the burden to prove that the regulations directly advance the State's substantial interests and that the regulations are no more extensive than necessary to further the state's interest. *Id.* at 301 (citing *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999)) (quoting *Edenfield v. Fane*, 507 U.S. 761, 771, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993)); see also *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1070–71 (10th Cir. 2001) ("The Supreme Court has stated that '[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'") (internal citation omitted). "This burden 'is not satisfied by mere speculation or conjecture.'" *Utah Licensed Beverage*

7

*Ass'n v. Leavitt*, 256 F.3d at 1070–71. The State "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* (internal citation omitted).

### A. The Government Has Failed To Meet Its Burden Of Establishing That The Regulations Directly Advance The State's Asserted Interest.

In determining whether the regulations directly advance the substantial interest of discouraging overconsumption of alcohol and preventing underage drinking, the Court considers "the relationship between the harm that underlies the State's interest and the means identified by the State to advance that interest." *Id.* (citing *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 555, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001)). Defendants have the burden of proof and "'must demonstrate that the harms [they] recite[ ] are real and that [defendants'] restriction will in fact alleviate them to a material degree.'" *Id.* (citing *Greater New Orleans Broad. Ass'n, Inc.* 527 U.S. at 188) (quoting *Edenfield v. Fane*, 507 U.S. at 771). "The need for the State to make such a showing is particularly great given the drastic nature of its chosen means—the wholesale suppression of truthful, nonmisleading information." *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. at 505. ("Accordingly, we must determine whether the State has shown that the price advertising ban will significantly reduce alcohol consumption."). "A speech regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." *Utah Licensed Beverage Ass'n v. Leavitt,* 256 F.3d at 1071 (internal citation omitted).

The State's interest involves significant health and public safety issues for the citizens of Missouri. To pass constitutional muster under the *Central Hudson* analysis, the regulations at issue must directly advance the State's interest in either discouraging overconsumption of alcohol or preventing illegal underage drinking. The State has the burden to establish the relationship between the potential harm identified and the means set forth in the statute and regulations to

8

advance that interest in order to meet the *Central Hudson* test. *Missouri Broadcasters Ass'n v. Lacy*, 846 F.3d at 301 (citing *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555, 121 S. Ct. 2404, 150 L.Ed2d 532 (2001)). The State must further demonstrate that the statute and regulations will, in fact, advance the State's substantial interest by addressing the potential harms to a material degree. *Id.* (internal citation omitted). Simply stated, the State must show that prohibiting advertising of discount prices and below-cost alcohol directly reduces overconsumption of alcohol and underage drinking.

While the burden of proof is on Defendants, Plaintiffs submitted credible and substantial evidence, through their expert witness, that that there is in fact no demonstrative relationship between media advertising of alcohol and overall consumption rates or underage drinking. Plaintiffs' evidence demonstrated that advertising significantly affected the brand and type of alcohol sold, but did not statistically impact the total amount of alcohol consumed by individuals. In fact, Plaintiffs submitted convincing evidence that increases in overall alcohol advertising expenditures have occurred while the per capita consumption of alcohol has actually declined. The State failed to present any evidence contradicting the testimony, empirical studies, and statistical analysis relied on by Plaintiffs' expert. Further, the State offered no empirical or statistical evidence, study, or expert opinion demonstrating how these regulations further protect the State's interest.[5] For example, the State did not present evidence showing overconsumption or underage drinking is less frequent in Missouri than in states without similar advertising restrictions. The State did not produce evidence that the rate of overconsumption or underage drinking decreased

---

[5] The State discussed a 2003 Kuo study during the cross examination of Plaintiffs' expert witness. However, the study was not admitted as evidence. The testimony regarding the study was that it examined establishments that sold alcohol within 2 miles of colleges. Plaintiffs' expert witness opined that the study only addressed advertising in establishments and on the windows of establishments, but did not relate to mass media price advertising.

9

when the challenged regulations were adopted in Missouri. As a result, the Court finds the State has provided no evidence that the challenged regulations significantly advance a substantial State interest. The State failed to meet its evidentiary burden.

The State's regulatory scheme is, at best, inconsistent if designed to reduce overconsumption and underage drinking. The State allows discount priced alcohol to be sold at retail establishments in Missouri. While the regulations at issue prohibit discount advertising *outside* a retailer, the discounted prices are allowed and can be advertised once a consumer is *inside* the establishment. As a result, consumers already motivated to go inside an establishment are thus allowed to have knowledge of, and take advantage of, the discounted price and sale. This is far more likely to lead to overconsumption than general media advertising.

The State's scheme has other inconsistencies. While the regulations prohibit the advertising of some sales, such as two-for-one specials, going out of business sales for a local wine store, or a coupon for a free drink with the purchase of a meal, the State allows other generic advertising of discounts of alcohol, including "happy hours" and "ladies' night" advertisements. The State also allows for coupons to be used for the sale of some types of alcohol, but not others. As identified by Plaintiffs there are glaring inconsistencies in the regulations as applied, and lead to serious questions as to whether the regulations even intend to *directly* advance its substantial interest in reducing overconsumption and underage drinking.

The Court also notes Missouri's neighboring states do not have the same prohibitions on alcohol advertising that Missouri imposes. Since a significant portion of Missouri citizens are subjected to advertising in their neighboring states, such as Kansas, Arkansas, Illinois and Iowa, the impact the Missouri regulations have on the State's interest are even further minimized. The advertising restrictions adversely impact Missouri establishments' competitive position in those

10

areas by depriving consumers of truthful comparative pricing information for Missouri establishments.

Here, this Court agrees, and Plaintiffs have established, that "the multiple inconsistences within the regulations poke obvious holes in any potential advancement" of the State's interest, "to the point the regulations do not advance the interest at all." *Missouri Broadcasters Ass'n v. Lacy*, 846 F.3d at 301. Therefore, based on the record before the Court, the Court finds the State has failed to meet its burden of establishing that the regulations directly advance the State's asserted interest.

### B. The Government Has Failed To Meet Its Burden Of Establishing That The Regulations Are No More Extensive Than Necessary To Further The Government's Interest.

Under *Central Hudson* factor number 4, the Court must look to whether there are alternatives that directly advance the asserted interests in a manner that is less intrusive to Plaintiffs' First Amendment Rights. See *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S at 564-566. The "regulation of speech cannot be sustained unless there is evidence that the state 'carefully calculated the costs and benefits associated with the burden on speech imposed' by the regulations*." Utah Licensed Beverage Ass'n v. Leavitt,* 256 F.3d at 1075 (citing *Lorillard Tobacco Co. v. Reilly,* 121 S.Ct. at 2425). The Court finds the State cannot meet its burden under *Central Hudson* factor number 4.

Plaintiffs' evidence establishes that the State's interest in discouraging the overconsumption of alcohol and combating illegal underage drinking can be obtained from less restrictive alternatives that may actually have a much greater effectiveness than the existing regulations. Plaintiffs' evidence established that educational programs have been found to be effective in promoting the State's interests, especially as it relates to driving while under the

11

influence. In fact, the evidence presented at trial indicates that if the State provided additional funding for these awareness programs it would further promote the State's interest in preventing underage drinking and preventing the overconsumption of alcohol. Defendants failed to offer evidence to contradict this. In fact, the State's own evidence demonstrated the effectiveness of educational programs in preventing underage drinking and also reinforced the need for, and direct benefits which would be derived from, committing additional resources to those programs. The Chief of Enforcement for the Missouri Division of Alcohol and Tobacco Control testified that his division is authorized 14 agents, all with prior law enforcement experience. His agents spend about 95 percent of their time on licensing and only 5 percent of their time on enforcement. The Chief stated he would like the Division's agents to spend 50 percent of their time on enforcement and 50 percent of their time on licensing.

Another alternative raised by Plaintiffs, and supported by the evidence presented, is an increase in the State's excise tax on alcohol that could further the government's interest. An overall increase in the cost of alcohol would, based on the evidence, likely reduce overall alcohol consumption.[6] Such a tax could, at least theoretically, advance the State's interest in reducing the overconsumption of alcohol and underage drinking.

From the record, the Court finds the State has multiple non-speech-suppressive alternatives that could directly advance the State's interests in reducing overconsumption and underage drinking. Alternatives include, but are not limited to: (1) an increase in taxes of alcohol; (2) direct controls on pricing; (3) development and full funding of educational campaigns concerning the problems of excessive and underage drinking; (4) a ban on promotions on alcohol in the entirety;

---

[6] The State's tax rates on alcohol are low compared to other states.

(5) enhancement of enforcement penalties; or (6) implementation of one or more of the foregoing alternatives within a 2-mile radius of colleges instead of the entire state.

The Court finds Plaintiffs have presented sufficient evidence that there are reasonable alternatives, including those stated herein, to the challenged restrictions that the State could have enacted that are less intrusive to Plaintiffs' First Amendment rights. See *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. at 507 (suggesting limiting alcohol purchases by heavily taxing and/or regulating alcohol or developing educational campaigns about the effects of alcohol as alternatives to Rhode Island's blanket ban on advertising the price of alcohol). The State provided no evidence to contradict the possible effectiveness of these alternatives.

Therefore, for the reasons set forth herein, the State has failed to meet its burden at step four and cannot establish that the regulations are no more extensive than necessary to further its interest.

## II. THE STATUTE.

Plaintiffs contend the Challenged Statute prohibits truthful, non-misleading commercial speech and restricts the flow of truthful information to potential customers. In addition, Plaintiffs argue the statute is unconstitutional because it compels speech and association by requiring producers and wholesalers to list more than one retailer on advertisements, if they chose to list any retailer at all. Defendants argue the State has a substantial interest in maintaining an orderly marketplace by maintaining a three-tier separation and preventing undue influence over retailers.

The statute states, in part, "Distillers, wholesalers, winemakers, brewers or their employees, officers or agents shall not, except as provided in this section, directly or indirectly, have any financial interest in the retail business for sale of intoxicating liquors, . . . ." Mo. Ann. Stat. § 311.070.1. The statute dictates how distillers and wholesalers may advertise retailers selling their products. *Missouri Broadcasters Ass'n v. Lacy*, 846 F.3d at 298. Producers and

13

wholesalers are required, if they choose to list any retailers in an advertisement, to exclude the retail price of the product from the advertisement, to list multiple unaffiliated retailers, and to make the listing inconspicuous. *Id.* at 299.

As previously stated, the Court finds that preventing the overconsumption of alcohol, preventing illegal underage drinking, and maintaining an orderly marketplace are substantial state interests. Alcohol manufacturing, wholesale distribution, and retail sales, are part of a significant industry with a large economic impact and significant potential social consequence. A consistent regulatory scheme, maintaining a distinct three-tier system separating manufacturing, wholesalers, and retailers from financial intermingling, could provide benefits to Missouri consumers by maintaining competition at the retail level. As such, the Court finds the first two *Central Hudson* factors have been met and analyzes whether the Challenged Statute: 1) directly advances its substantial interests; and/or 2) is no more extensive than necessary.

### A. **The Government Has Failed To Meet Its Burden Of Establishing That The Statute Directly Advances The State's Asserted Interest.**

As set forth in the Eighth Circuit's opinion, "Missouri's Liquor Control Law establishes restrictions on retailers, wholesalers, and producers exchanging money to promote the responsible consumption of alcohol and other state policy interests." *Missouri Broadcasters Ass'n v. Lacy*, 846 F.3d at 302. "The challenged statute is an exception to those restrictions." *Id.* (citing Mo. Ann. Stat. § 311.070.1). The Eighth Circuit noted, "the statute does nothing to further the interest in maintaining an orderly marketplace and actually weakens the impact of the overall statutory scheme because this statute is an exemption to the restrictions preventing retailers, wholesalers, and producers from becoming financially entangled." *Id. See* Mo. Ann. Stat. §§ 311.070.1, 311.070.4(10).

14

In essence, the three tier system the State is promoting is a measure to keep the manufacture and wholesale tiers from controlling or dominating the retail tier. Therefore, the State believes the three tier system maintains an orderly marketplace by prohibiting vendor paid advertisements and cooperative advertisements. The State's purported goal is to restrict manufacturers and wholesalers from comingling with, or picking favorites among, retailers. The intent is to prevent restrictions of competition and/or prevent wholesalers from gaining fiscal control of retailers' sales tactics or strategies.

Missouri's Challenged Statute, similar to the regulations discussed herein, is also filled with exceptions and inconsistencies adopted piecemeal over time. For example, the State permits Missouri based wineries to comingle all three tiers, including producing wine, wholesaling wine, and retailing wine. *See* Mo. Ann. Stat. §§ 311.190.1 and 311.070.11. Further, Missouri allows out of state wineries to make direct retail sales to Missouri residents and consumers. Distillers of spirits and microbrewers are allowed to sell their own produced liquor or beer through retail businesses on their premises, again comingling the three tiers the Statute is argued to protect. Plaintiffs provided numerous examples, such as these, demonstrating how the three tier regulatory system has been blurred, if not wholly abandoned.

The Challenged Statute generally prohibits distillers, wholesalers, brewers, or winemakers from providing advertising, financial assistance, or incentives to retailers through advertising.[7] However, even the Statute itself contains numerous exceptions to this general rule. These exceptions apply to both advertising restrictions and to prohibitions on providing financial incentives and assistance to retailers. As described above, a distiller, wholesaler, brewer, or

---

[7] The Challenged Statute restricts truthful fact-based advertising and therefore, infringes on commercial speech and is subject to First Amendment protection under the *Central Hudson* test.

winemaker may advertise on behalf of a retailer if the advertisement refers to multiple retailers, does not include the retail price, and only identifies the retail businesses in an inconspicuous manner.

In addition, wholesalers are permitted to provide other financial incentives to retailers, including barware, mirrors, or other tangible goods to be placed inside the retail establishments, that in essence provide advertising of the wholesaler's products. These types of "incentives" expressly permit some financial commingling of the wholesale and retail tiers of the liquor industry and contradict the State's asserted interest in maintaining a separate three tier marketplace. In response to Plaintiffs' evidence, the State has provided no explanation as to why advertising commingling would disrupt the State's regulatory scheme, while these other instances of financial commingling that are allowed under the State's statutes and regulations do not.

The Court finds the State cannot meet its burden to establish that the Statute directly advances a substantial interest. The infringement of Plaintiffs' First Amendment rights clearly exceeds any direct benefit to maintaining what is left of the three tier regulatory scheme.[8] As a result, the State has failed to establish how the Challenged Statute directly advances its substantial interests.

> B. **The Government Has Failed To Meet Its Burden Of Establishing That The Statute Is No More Extensive Than Necessary To Further The Government's Interest.**

The Court finds that the Challenged Statute is not narrowly tailored to the State's substantial interests. Here, the only issue addressed by the statute is cooperative advertising. The

---

[8] In essence, the State's interest in maintaining an orderly marketplace through a three tier system has certainly been blurred, if not eliminated, for certain entities based on the various exemptions, including those for distilleries, breweries, and Missouri wineries.

16

State has alternative non-speech-suppressive alternatives that are available to meet the State's interest in maintaining an orderly marketplace.

For example, the State may police rather than ban intra-tier advertising arrangements. *See e.g., Retail Digital Networks, LLC v. Appelsmith,* 810 F.3d 368, 653 (9th Cir. 2016). Further, other alternatives exist, such as restoring the three tier separation by taking away other exceptions that do not affect First Amendment speech, while maintaining some level of control over supplier payments to retailers. The State could monitor wholesale and producer advertising and any cooperative advertising payments through a self-reporting system, or it could limit the amount of money allowed to be spent on advertising on an annual basis. The State could limit non-advertising related financial incentives and assistance which could be provided to retailers.

### C. **The Statute Unconstitutionally Compels Speech.**

Finally, the Court agrees with Plaintiff's contention that the Statute unconstitutionally compels speech and association by requiring producers and wholesalers to list more than one retailer on an advertisement, if they choose to list any. In doing so, the Statute's requirement compels producers and wholesalers to associate and support retailers they may not wish to include, if they choose to include a retailer in an advertisement. See *Missouri Broadcasters Ass'n v. Lacy,* 846 F.3d at 303 (internal citations omitted)("[F]reedom of thought and expression 'includes both the right to speak freely and the right to refrain from speaking at all.'"). "The Statute is conditional in that it only impacts speech if producers and wholesalers choose to include the name and address of a retailer in an advertisement, but if a producer or wholesaler does choose to include such information, it is compelled to (1) associate with multiple retailers, and (2) include multiple retailers' information on the advertisement." *Id.* The Court finds Plaintiffs have established that compelling this speech and association violates the First Amendment.

17

As set forth herein, there are ways the State can regulate abuse of favoritism to retailers beyond the rigid prohibitions contained in the Statute. The Court finds the State has failed to establish that the Statute advances a substantial state interest, and further, even if the Statute did in fact advance a substantial state interest, the State cannot establish that it is no more extensive than necessary to further that interest.

## CONCLUSION

The Eighth Circuit's opinion made clear if the allegations contained in Plaintiffs' Complaint are true, then the regulations and statute violate the First Amendment and are unconstitutional. For the reasons stated herein, the Court finds the allegations are true. Defendants have failed to meet their burden under *Central Hudson*.

Wherefore, the Court finds in favor of Plaintiffs and finds the challenged regulations and statute violate the First Amendment to the United States Constitution and are unconstitutional. The Court hereby **ORDERS** that Defendants are permanently enjoined from enforcing the advertising restrictions contained in Missouri regulations 11 C.S.R. 70-2.240(5)(G) and 11 C.S.R. 70-2.240(5)(I). The Court further **ORDERS** that Defendants are permanently enjoined from enforcing Mo. Ann. Stat. § 311.070 to the extent it prohibits alcoholic beverage manufacturers and distributors from providing financial or other support for retail advertising of alcoholic beverages that does not meet the requirements of the exception set forth in Mo. Ann. Stat. § 311.070.4(10).

The Court further finds Plaintiffs are entitled to a judgment for attorneys' fees and court costs pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys Fees Award Act of 1976, and/or 28 U.S.C. § 2202. Plaintiffs are ordered to submit their Motion for attorneys' fees and court

18

costs to the Court within 30 days of the date of this Order. Defendants shall have the opportunity to respond to Plaintiffs' Motion prior to the Court issuing a ruling on that issue.

**IT IS SO ORDERED.**

Date: June 28, 2018

                                        */s/ Douglas Harpool*
                                        DOUGLAS HARPOOL
                                        UNITED STATES DISTRICT JUDGE